**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| GARFIELD ALDINGTON CAMPBELL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-3036 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

Petitioner Garfield Aldington Campbell seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2001 state felony conviction for forgery of a government document. Respondent has filed a motion for summary judgment, (Docket Entry No. 8), with a copy of the state court record. Campbell filed a response. (Docket Entry No. 10). Based on careful consideration of the pleadings; the motion and response; the record; and the applicable law, this court grants respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

## I. Background

Campbell was charged by indictment with the offense of forgery of a government instrument, a Social Security card issued by the United States Government bearing the name "Garfield Aldington Campbell" and the number 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.[1] The offense was alleged to

---

[1] In the trial court record, both State's Exhibit 1 (Reporter's Record, Vol. VII, p. 5, State's Exhibit No. 1) and Defendant's Exhibit 1 (Reporter's Record, Vol. VII, p. 20, Defendant's Exhibit

have occurred in Harris County, Texas on or about September 11, 2000. (Clerk's Record, Vol. I, p. 6). On September 18, 2001, Campbell's first trial ended in a mistrial after the jury deadlocked. (Clerk's Record, Vol. I, p. 143). After a second trial, the jury found Campbell guilty. (Cause Number 855276). Campbell pleaded true to an enhancement paragraph alleging a prior conviction for possession of marijuana in an amount between 5 pounds and less than 50 pounds (Cause Number 466835), and an enhancement paragraph alleging prior conviction for an attempted illegal investment (Cause Number 575588). On September 19, 2001, the jury sentenced Campbell to a sixty-year prison term. Campbell timely filed a written notice of appeal. (Clerk's Record, Vol. I, pp. 107-09, 114). On September 28, 2001, the trial court appointed Dick Wheelan to represent Campbell on the direct appeal. (*Id*. at 113). Campbell filed a *pro se* motion for new trial on October 5, 2001, which the trial court denied on November 15, 2001. (*Id*. at 149). The First Court of Appeals of Texas affirmed Campbell's conviction on December 27, 2002. *Campbell v. State*, No. 01-01-01057-CR., 2002 WL 31941499 at *6 (Tex. App. -- Houston [1st Dist.] 2001, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused Campbell's petition for discretionary review on July 30, 2003. Campbell filed an application for state habeas corpus relief on January 7, 2004, which the Texas Court of Criminal Appeals denied without written order or hearing, on the findings of the trial court, on June 9, 2004. *Ex parte Campbell*, Application No. 58,279-01 at cover.

---

No. 1, p. 4) show the correct number of the card as 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, which corresponds to the indictment and other proof.

On June 21, 2004, this court received Campbell's federal petition. Campbell contends that his conviction is void for the following reasons:

(1) His trial counsel, K. Omari Fullerton, rendered ineffective assistance by:

(A) requesting a continuance at trial without using the proper format under the Texas Code of Criminal Procedure;

(B) failing to subpoena favorable witnesses as Campbell requested;

(C) failing to understand Rule 902 of the Texas Rules of Evidence;

(D) failing to object to the testimony of Deputy Foose;

(E) failing to request a hearing on the admissibility of Campbell's statement to Deputy Foose;

(F) failing to question Deputy Foose properly about the authenticity of one of the Social Security cards;

(G) having a police report admitted into evidence to Campbell's detriment;

(H) failing to request a jury instruction for the lesser-included offense of possession of a forged government instrument;

(I) failing to object to the prosecution's oral motion to prohibit Campbell from presenting his conspiracy defense;

(J) failing to object to or request an ongoing objection to Deputy Foose's testimony concerning what he had been told by the detective who arrested Campbell; and

(K) failing to obtain a complete copy of the reporter's record from the first trial for use in the second trial.

(2) Appellate counsel rendered ineffective assistance by:

(A) failing to challenge the factual and legal sufficiency of the evidence;

(B) failing to provide references to the record of the sufficiency of the evidence issues;

(C) failing to raise the trial court's failure to instruct the jury on circumstantial evidence and a lesser-included offense;

(D) failing to raise the issue that the evidence did not affirmatively link Campbell to the crime; and

(E) failing to obtain a complete copy of the trial transcript from the first trial to determine alternative grounds of error for submission on direct appeal.

(3) The trial court constructively denied Campbell effective assistance of counsel when it:

(A) overruled numerous objections made by defense counsel;

(B) denied the opportunity to present the legal defense of conspiracy;

(C) denied defense counsel's request for a continuance; and

(D) misled defense counsel about the transcription of the first trial.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, p. 7).

Each ground is examined below.

## II. The Applicable Legal Standards

Campbell's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Under the AEDPA, the substantive evidentiary burden differs depending on whether the issue is one of law, fact, or both. *See Drinkard*, 97 F.3d at 767-68. The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000). Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1) -- which mandates that findings of fact made by a state court are "presumed to be correct" -- overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, they must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Campbell is a *pro se* petitioner. In this circuit, *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Campbell's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III. Statement of Facts

On September 11, 2000, Preston Foose, a Harris County deputy sheriff, was at the Harris County Sheriff's Department's central booking processing another individual.

(Reporter's Record, Vol. IV, pp. 14-15). Deputy Foose saw a detective with the Warrants Division processing and booking Campbell. (*Id*. at 15-17). The detective asked Deputy Foose to look at two Social Security cards that Foose saw taken from Campbell's wallet. (*Id*. at 17-18). One Social Security card taken from Campbell's wallet had a misprinted "G" on its face. (*Id*. at 20, State's Exhibit 1). The card, which appeared too bright and too light to be valid, had the name "Garfield Aldington Campbell" and number 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 printed on it. (Reporter's Record, Vol. IV, p. 20; Vol. VII, p. 5, State's Exhibit 1). The lettering on the card was obviously done with a typewriter rather than the usual computer-generated printing. (Reporter's Record, Vol. IV, p. 20).

The second Social Security card removed from Campbell's wallet appeared genuine to Deputy Foose. This Social Security card, marked at trial as State's Exhibit 2, bore the name "Garfield Aldington Campbell, Jr.," and the number 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. (Reporter's Record, Vol. IV, pp. 21-22; Vol. VII, State's Ex. 2, p. 6). Deputy Foose testified that the dispatcher said that this second card "came back to the defendant after he had told me something different though." (*Id*. at 22). Deputy Foose believed that Campbell knew one of the cards was forged based on Campbell's statement "about them being forged." (*Id*. at 24). Deputy Foose testified that people use forged Social Security cards for fraudulent purposes, such as establishing a new identity and obtaining employment if a person is not in this country legally; obtaining credit; applying for loans; enrolling in school; and receiving treatment in a hospital. (Reporter's Record, Vol. IV, pp. 13-14). Deputy Foose explained that Campbell's possession of the cards, the names on the cards, and the circumstances, led him

to conclude that Campbell knew one of the cards was forged and intended to use it for illegal purposes. (*Id*. at 23-25).

Campbell was in custody on an aggravated assault charge when Deputy Foose was asked to examine the Social Security cards recovered from Campbell's wallet. At the punishment phase of trial, the jury learned that Campbell's wife, Opal Ragston, had left him in June 2000 because he was dealing drugs. (*Id*. at 23). When she decided not to allow Campbell to see their children, Campbell pistol-whipped her. (*Id*. at 29-30). Opal Ragston moved in with a friend, Willis Wade. On September 5, 2000, Campbell and his girlfriend, Chastity Reddick, confronted Opal Ragston and her friend, Derek Watson, at Wade's home. (*Id*. at 35). Campbell accused Ragston and Watson of having an affair. When Watson told Campbell to stop saying that, Campbell pulled a gun and threatened to kill Watson. (*Id*. at 38).

During the cross-examination of Foose, Campbell's counsel offered Defendant's Exhibit 1, a copy of Deputy Foose's offense report, into evidence. Defense counsel had Deputy Foose read the following portion of the offense report to the jury:

> Upon search of the defendant's property, he was found to be in possession of what was found to be a fake and forged social security card. The numbers were typed in and had the defendant's signature on it. The card was bearing 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. He had stated he had it issued to him from the State of Texas. He was found to be in possession of another social security number card. This one displayed 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 and he stated it belonged to his son that was deceased. The number was coming back to him and not a child.

(Reporter's Record, Vol. IV, pp. 33-34; Vol. VII, p. 20, Defendant's Ex. 1, p. 4).

On redirect examination, and without objection, Foose read the following from the report: "[U]pon further investigation, the defendant stated he had bought the card bearing the 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 from a friend for $800 but could not produce his name." (Reporter's Record, Vol. IV, p. 37; Reporter's Record, Vol. VII, p. 20, Defendant's Exhibit No. 1, p. 4). Deputy Foose testified that he had dispatch check the number on the card admitted as State's Exhibit 2, and it came back to Campbell. (Reporter's Record, Vol. IV, p. 38). Deputy Foose said that Campbell had stated that the card belonged to his deceased child, but never gave the age of that child. (*Id*.).

State's Exhibit 3, a certificate from the Social Security Administration, a domestic public document under seal within the meaning of Texas Rule of Evidence 902(1), stated: "This certifies that the Social Security Number of 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, last issued in January 1955, does not belong to Dale Charles George or Garfield Aldington Campbell, but belongs to another individual." (Reporter's Record, Vol. IV, p. 39; Vol. VII, p. 7, State's Exhibit 3). Deputy Foose investigated and found that Campbell's date of birth was August 7, 1957, two years after the Social Security number in question issued. (Reporter's Record, Vol. IV, p. 40).

Campbell testified in his own behalf. (Reporter's Record, Vol. IV, pp. 42-57). Campbell testified that he had three children, one named Garfield Campbell, Jr., one named Garfield Campbell, III, and one named Lester Nathaniel Campbell, all named after their father. (*Id*. at 50). The first child, Garfield Aldington Campbell, Jr., was deceased. State's Exhibit 2 was his son's Social Security card. (*Id*. at 45). Campbell denied having State's

Exhibit 1 in his possession on September 11, 2000. (*Id*. at 45). Campbell denied forging State's Exhibit 1, ever seeing it before, or possessing it with the intent to pass it to anyone. (*Id*. at 46-47).

On cross-examination, Campbell admitted that he had used the name of "Dale Charles George" when he was previously convicted for possession of marijuana. Campbell explained that he had "made up" the name. Campbell testified that he used the fake name "Dale Charles George" when he got in trouble because he "wanted to protect [his] real name." (Reporter's Record, Vol. IV, p. 55). He insisted that his real name was "Garfield Aldington Campbell." (Reporter's Record, Vol. IV, p. 52). Campbell testified that he personally had no Social Security card. (*Id*. at 53). Campbell denied naming his children after himself so that he could use their Social Security numbers as his own. Campbell said that the legitimate Social Security card belonged to his oldest child, who "was premature and spent about two weeks on this earth." (*Id*. at 53). Campbell had his deceased child's Social Security card in his wallet "for security reasons" and for "sentimental reasons." (*Id*. at 54). Campbell admitted that State's Exhibit 1 was a fake, but insisted that he had no knowledge about where it came from. Campbell denied that he had told the deputy that he had paid a friend $800 for the card. (*Id*. at 56). Campbell alleged that the entire series of events "could be a conspiracy between him [the deputy] and my wife and her boyfriend." (*Id*. at 56).

## IV. The Issue of Procedurally-Barred Claims

Respondent argues that claims 1I, 1J, 1K, 2D, 3A, 3B, 3C, and 3D are unexhausted and procedurally barred because Campbell did not raise them in his state habeas application

or his state petition for discretionary review. Campbell responds by asserting that he sent a supplement to his state habeas application before the state habeas court entered its findings of fact. (Docket Entry No. 10, Petitioner's Response, p. 3). Campbell points out that the Texas Court of Criminal Appeals received his state habeas application on February 10, 2004 and denied relief on June 9, 2004. Campbell argues that the State was provided with a full and fair opportunity to respond to the supplemental claims. (*Id*. at 4).

This court has reviewed the state court record and finds no pleadings that appear to be a supplement to the state habeas application. The court has also reviewed the docket sheet from the Texas Court of Criminal Appeals. It does not indicate that Campbell filed a supplement to his state habeas application.

Prisoners suing under section 2254 are required to exhaust their claims in state court before applying for federal collateral relief. *See Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). Full exhaustion of all claims presented is required before federal habeas corpus relief is available. *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982). The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998) (citing *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)).

In *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001), the state prisoner filed a section 2254 motion, arguing that he was deprived of effective assistance of counsel when the Texas Court of Criminal Appeals refused to consider a supplement to his state habeas application. Petitioner argued that this supplement included an affidavit from defense

counsel acknowledging his own ineffective assistance in failing to preserve an issue for appeal, as well as the Court of Criminal Appeals' criticism of counsel for this failure. The Fifth Circuit stated that even though the petitioner argued that the supplement was critical to the full development of his ineffective assistance claim, his supplemental application was filed late. Because petitioner did not argue "cause" for the procedural default on this claim, he was barred from using the arguments raised in the supplement on federal habeas review. Based on the reasoning of *Wheat,* Campbell's claims 1I, 1J, 1K, 2D, and 3A-3D, are unexhausted.

Campbell did not raise claims 1I, 1J, 1K, 2D, 3A-3D in his state habeas petition. He is now foreclosed from bringing these claims in a successive habeas petition because of Texas's abuse of the writ doctrine. *Ex parte Carr,* 511 S.W.2d 523, 525-26 (Tex. Crim. App. 1974). A procedural rule that acts as a bar must be "firmly established and regularly followed." *Ford v. Georgia,* 498 U.S. 411, 423 (1991) (quoting *James v. Kentucky,* 466 U.S. 341, 348 (1984)). Texas strictly and regularly applied the abuse of the writ doctrine when Campbell filed his habeas petition. *Emery v. Johnson,* 139 F.3d 191, 195, 201 (5th Cir. 1997); *see also Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995). Campbell would be precluded from asserting his unexhausted claims in a successive habeas petition in Texas state court.

This court finds that claims 1I, 1J, 1K, 2D, 3A-3D are procedurally barred. Under AEDPA, a federal court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28

U.S.C. § 2254(b)(2)(West 1997). Under this provision, a federal court has discretion to review the merits of a habeas corpus application containing unexhausted claims. This court also examines the unexhausted claims on the merits. This analysis is set out below.

## V. The Claim of Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that petitioner suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v. Cain,* 246 F.3d 471, 477 (5th Cir. 2001). The district court may decide such a claim if counsel either rendered reasonably effective assistance or if no prejudice can be shown. If a petitioner fails to make one of the required showings, the court need not address the other. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v. Johnson*, 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 691.

Campbell asserts that his trial counsel provided ineffective assistance in eleven different ways. The state habeas court noted that Campbell raised his claims of ineffective assistance of trial counsel on direct appeal, and that the trial court record was sufficient for the appellate court to address – and reject – the merits of those claims. *Ex parte Campbell*, Application No. 58,279-01 at 69. The state habeas court also found that Campbell had failed to demonstrate that his trial and appellate counsel's conduct fell below an objective standard of reasonableness or that but for counsel's alleged deficient conduct, there was a reasonable probability that the result of the proceeding would have been different. *Id*. This court gives the state court's factual findings a presumption of correctness. 28 U.S.C. § 2254(d)(2).

**A. The Claim of Trial Counsel's Failure to Use the Proper Format in Requesting a Continuance at Trial**

Campbell asserts that defense counsel failed to file a written motion for continuance at the beginning of the second trial. On September 19, 2001, counsel announced not ready, explaining that he wanted to call certain witnesses. Counsel never identified the witnesses, never stated whether they would be available to testify, and never described the substance of their testimony. Campbell alleges that counsel was unaware of the requirements of Texas law and failed to substantiate the request for a continuance.

The record shows that before voir dire began in the second trial on September 19, 2001, defense counsel orally moved for a continuance. The record includes the following exchange between the trial judge and Campbell's defense counsel:

> Defense Counsel: The defendant is not ready at this time, and we are asking the Court to continue this case . . . . And it was a hung jury yesterday. And, one, we need the transcript, the trial transcript. It is not going to be here until 12:00 o'clock. That's what the court reporter says. I already paid the court reporter.
>
> Court: I talked to the court reporter in this matter and she informed me it will be ready by noon. This case was heard. It lasted about 45 minutes. And you were here and heard the evidence and Mr. Campbell heard the evidence and it will be here for cross examination.
>
> Defense Counsel: And, also, Your Honor, there are certain witnesses that we would want to call. I might need them. I need to do a bill based on the information that came out in the trial.
>
> Court: Well, you knew about that yesterday. I hope you got the subpoenas out, and the Court will see that you get expedited service on those matters.
>
> Defense Counsel: I have subpoenaed one. That's what I am saying that we are not able to locate the witness but we are aware of the witness. I wanted to just in case it comes back on appeal on this case but there are witnesses. There are leads that I have gotten dealing with this case that I need to pursue as a lawyer, and I don't think I could effectively represent Mr. Campbell if I were not able to pursue it based on that information.
>
> Court: Well, this case is some 307 days old and the Court is going to try this case.

> Defense Counsel: There are other cases waiting to be tried, Your Honor.
>
> Court: Oh, we have got lots of cases to be tried. Mr. Campbell is in jail, and he is not a native born citizen. There is a hold on him, and we are going to go to trial on this case.
>
> Defense Counsel: I don't think this should be used against his -- I'm not a native born.
>
> Prosecutor: He is also a habitual, Your Honor.
>
> Defense Counsel: So I don't think, Your Honor, that should be held against him.
>
> Court: I'm not holding it against him. I am saying we need to dispose of this case. It is now a year old. We have got problems in our jails, and we are going to try this case.
>
> Defense Counsel: But it's not a year old but also that's the information.
>
> Court: We will try the case.

(Reporter's Record, Vol. III, pp. 5-6; Clerk's Record, Vol. I, p. 144).

Under Texas law, a continuance motion must generally be written and sworn to preserve error. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (Vernon 1989); *Dewberry v. State*, 4 S.W.3d 735, 755-56 (Tex. Crim. App. 1999). A motion based on a witness's absence must include also recite certain information about the witness, the expected testimony, and the diligence used to procure the testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 29.06 (Vernon 1989).

Campbell raised this issue on appeal. The court agreed that although the oral motion did not meet the requirements of Article 29.06, no basis for reversal was shown:

> . . . [N]othing in the record shows, in the five and a half hours between the motion and the State's case-in-chief, whether these witnesses had been located, whether they were then available, or whether additional subpoenas had issued. More importantly, the record does not reveal who the witnesses were or to what they would have testified. Accordingly, assuming without deciding that counsel performed deficiently, we cannot know if the trial's outcome would have been different without knowing whether the witnesses' testimony would have favored appellant and whether they were available at the time of trial.

*Campbell v. State,* No. 01-01-01057-CR., 2002 WL 31941499 at *2-3 (Tex. App. -- Houston [1st Dist.] 2001, pet. ref'd) (not designated for publication).

The trial court made it clear that it would not have granted a motion for continuance even if it had met the requirements of the Texas Code provisions. In light of the trial court's reasons for proceeding to trial, a written motion for continuance would have been pointless. The Fifth Circuit has rejected an ineffectiveness claim based on counsel's failure to file a written motion for continuance when counsel did make an oral motion. *Stokes v. Procunier*, 744 F.2d 475, 482 n.3 (5th Cir. 1984). In such a case, the petitioner must explain how a written motion would have been more effective. *Schwander v. Blackburn,* 750 F.2d 494 (5th Cir. 1985). The state courts had ample basis to conclude that a written motion for continuance containing additional information would not have changed the outcome. Campbell is not entitled to relief on this claim.

**B. The Claim that Campbell Failed to Subpoena Favorable Witnesses**

Campbell complains that his defense counsel failed to call three favorable witnesses: Michael Evans, Sandra Ragston, and Evlyn Ragston. (Docket Entry No. 1, Petitioner's

Memorandum, pp. 9-10). Campbell argues that his wife, Opal Ragston, was having an affair with Derek Watson and that they conspired to put the forged Social Security card in Campbell's wallet in an effort to have him imprisoned.

Campbell alleges that Evans would have testified that on August 22, 2000, Watson gave him a blank Social Security card and asked him to help put Campbell's name and a fictitious Social Security number on it. (Docket Entry No. 1, Petitioner's Memorandum, p. 10). Campbell claims that Sandra Ragston would have testified that she knew Watson and Opal Ragston were having an affair and that they wanted to have Campbell "arrested, charged and confined for a criminal offense in order to openly carry on with their affair." *Id.* Campbell provided the state habeas court with an affidavit from Sandra Ragston summarizing the substance of her testimony. *Ex parte Campbell,* Application No. 58,279-01 at 48. Campbell asserts that Evlyn Ragston would have testified to the same allegations and to Campbell's character.

Campbell claims that he told defense counsel about these witnesses, but that counsel failed to secure their presence at trial. Campbell also complains that counsel failed to ask for a continuance so that he could locate the witnesses. *Id.* at 11. Campbell argues that he was unable to present a viable defense without these witnesses.

The prosecutor made a motion in limine before trial, asking that Campbell and defense counsel not be allowed to refer to any alleged conspiracy between Opal Ragston and Derek Watson. (Reporter's Record, Vol. III, pp. 6-7). The trial court granted the motion and ordered defense counsel not to talk about the "conspiracy" without first approaching the

bench. (*Id*. at 7). During the direct examination of Campbell, defense counsel sought to introduce a certified copy of an offense report prepared by the Houston Police Department. (Reporter's Record, Vol. IV, p. 43). The offense report stated that Campbell had reported that his apartment had been burglarized on February 9, 2000. (Reporter's Record, Vol. VI, p. 21). Defense counsel explained to the court that the offense report would support Campbell's defense theory that someone had broken into his apartment to plant the fake Social Security card. Defense counsel explained that Campbell would testify that various people had access to his apartment and may have tried to set him up. (Reporter's Record, Vol. IV, p. 43). The court ruled that the certified copy of the offense report was inadmissible and threatened to hold defense counsel in contempt if he persisted in discussing it. (*Id*. at 44).

The trial court ruled that Campbell could not present evidence of his conspiracy theory. Defense counsel attempted to offer a police offense report in support of the theory and was threatened with contempt. For defense counsel to have tried to call the three witnesses Campbell identifies would have been futile. Counsel made a reasonable strategic decision not to call these witnesses. Moreover, there is no basis other than speculation to support Campbell's argument that the outcome of the trial would have been different had counsel presented the theory of a conspiracy between Opal Ragston and Derek Watson. The evidence Campbell relies on does not present such uncontradicted or overwhelming support for his explanation of the presence of the forged Social Security card in his wallet as to make it likely that the jury would have reached a different result. Even if counsel had offered the

additional testimony of Michael Evans, Sandra Ragston, and Evlyn Ragston, Campbell has presented no basis that would support an inference that the jury would have reached a different result.

Campbell is not entitled to relief on this claim.

### C. The Claim of Counsel's Failure to Understand Rule 902(1) of the Texas Rules of Evidence

Campbell claims that defense counsel misunderstood Rule 902 of the Texas Rules of Evidence and allowed the admission of damaging evidence. Campbell asserts that his case was prejudiced by counsel's citation to the wrong subsection of Rule 902 of the Texas Rules of Evidence. (Docket Entry No. 1, Petitioner's Memorandum, p. 12). Defense counsel objected to the admission of the forged Social Security card and affidavit from the Social Security Administration on the basis that timely notice had not been provided. (Reporter's Record, Vol. IV, p. 39). Campbell argues that the 14-day publication notice of Rule 902(10) refers to business records, while the prosecutor offered the card under Rule 902(1) as a document bearing an official government seal.

The record shows that State's Exhibit 3 was a certified document from the Social Security Administration. The document stated that the Social Security number on the first card, 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, did not belong to Dale Charles George or Garfield Aldington Campbell. The card was issued in January 1955. The State offered Exhibit three under Rule 902(1) of the Texas Rules of Evidence, which allows domestic, public documents under seal to be admitted without an authenticity predicate. *See* TEX. R. EVID. 902(1). Defense counsel

objected on the ground that he had not received 14 days' notice; the trial court overruled the objection.

Under Rule 902(1), evidence of authenticity is not required for "[a] document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution." TEX. R. EVID. 902(1) (West 2004). Rule 902(10), not Rule 902(1), addresses authentication of business records. Rule 902(1) requires that the record be filed 14 days before trial and that prompt notice be given to the parties. *See* TEX. R. EVID. 902(10)(a).

Campbell raised this issue on appeal. That court found:

> Appellant does not argue that the document was inadmissible, and the trial court appears to have been within its discretion in admitting the document under rule 902(1). *See id*. Rather, appellant argues that counsel's objection shows that counsel did not understand the rules of evidence. Even if counsel did not understand rule 902(1), appellant does not show how he was harmed by that shortcoming because the document was still admissible. Appellant explains further that, because counsel "believed a document important to the prosecution to be inadmissible [under rule 902(10)], he could not possibly advise Appellant that the State would be able to prove this essential element of its case." Nothing in the record shows how counsel advised appellant. To consider this argument would require speculation, which we decline to do. *See Gamble*, 916 S.W.2d at 93.

*Campbell v. State,* No. 01-01-01057-CR., 2002 WL 31941499 at *3 (Tex. App. -- Houston [1st Dist.] 2001, pet. ref'd) (not designated for publication).

The Social Security card was a self-authenticating document under Rule 902(1). (Reporter's Record, Vol. IV, p. 39). Campbell cannot show that any objection to the admission of State's Exhibit 3 under Rule 902(1) would have been sustained. The state courts reasonably rejected Campbell's claim; he is not entitled to relief.

**D. The Claim that Defense Counsel Failed to Object to Hearsay Testimony**

Campbell complains that defense counsel did not object when the prosecutor asked Deputy Foose if he had an opinion as to whether Campbell knew one of the cards taken from his wallet was forged. (Docket Entry No. 1, Petitioner's Memorandum, p. 13). Deputy Foose testified that Campbell "had told him something about the card being forged." *Id.* Campbell argues that his counsel should have objected to the testimony as irrelevant under TEX. R. EVID. 401. Campbell asserts that his statement to the deputy did not comply with TEX. C. CRIM. PROC. art 38.22 because it was not written or recorded; that he was in custody when he made the statement and did not receive *Miranda* warnings; and that Deputy Foose was not qualified as an expert on the authenticity of the Social Security card.

The State had to prove that Campbell forged a Social Security card with the intent of harming or defrauding another. *See* TEX. PEN. CODE ANN. § 32.21(b). The statute defines "forge" to mean:

> (A) to alter, make, complete, execute, or authenticate any writing so that it purports:
>
> > (i) to be the act of another who did not authorize that act;

(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii) to be a copy of an original when no such original existed;

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).

*See id*. § 32.21(a)(1)(A)-(C).

On direct examination, Deputy Foose stated that he concluded that the first Social Security card was forged because the background color was too light, there was a misprint, and the lettering was typed rather than printed. Deputy Foose testified as follows:

> [State.]: Did you form an opinion of whether or not the defendant intended to use to [sic] utter those cards?
>
> [Deputy]: Yes, sir.
>
> [Counsel]: Object, Your Honor, that's a legal question.
>
> [Court]: That will be overruled. He may state an opinion.
>
> [State]: What was your opinion?
>
> [Deputy]: Due to the name and under the circumstances that I found out about the defendant and something else the defendant had told me himself, it came to my conclusion that he was going to use it for possibly illegal purposes.
>
> [State]: And is that, in your opinion, a forged writing, State's Exhibit 1?

[Deputy]: Yes, sir.

[State]: Did the defendant have any legitimate social security cards on him, any ones that actually did belong to him?

[Deputy]: No, sir.

[State]: Have you ever met the defendant before that day?

[Deputy]: No, Sir.

. . .

[State]: Did you form an opinion as to whether or not the defendant knew that those cards were forged?

[Deputy]: Yes, sir.

[State]: What was that opinion?

[Deputy]: Something he had stated to me about it being forged.

[State]: Do you believe that he knew it was forged?

[Deputy]: Yes, sir.

(Reporter's Record, Vol. IV, pp. 23-24).

Under Texas law, an oral confession by an accused in police custody is generally not admissible at trial. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp. 2003). This general rule does not apply to a statement containing assertions of facts or circumstances that are found to be true and tend to establish the guilt of the accused. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(c) (Vernon Supp. 2003).[2] The facts or circumstances

[2] Section 3(c) states:

must be true and show that the statement was incriminating and led to the discovery of items or information not previously discovered by the State. *McGilvery v. State*, 533 S.W.2d 24, 26 (Tex. Crim. App. 1976). The statute places no limitation on the manner in which the facts are found to be true. *Port v. State*, 791 S.W.2d 103, 106 (Tex. Crim. App. 1990).

After Campbell was in custody, he told Deputy Foose that he had purchased the card for $800 from a person whose name he did not know. (Reporter's Record, Vol. IV, p. 37). The certificate from the Social Security Administration established that the card was not genuine. (Reporter's Record, Vol. IV, pp. 39-40). Campbell's statement that he had purchased the Social Security card for $800 was corroborated. Campbell's assertion was both found to be true and showed his guilt, satisfying Article 38.22. Campbell has shown no basis to disregard or reject the state courts' conclusion that the admission of Campbell's oral statement to Deputy Foose into evidence provided no basis for relief.[3]

---

> Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(c) (Vernon Supp. 2003).

[3] Campbell raised this issue on direct appeal. The state appellate court found:

> As for appellant's claim that nothing showed compliance with article 38.22, the record as it existed at the time the deputy testified did not show the circumstances surrounding appellant's statement, other than it was made "upon further investigation" while appellant was in custody.
>
> Article 38.22 excludes oral statements made during custodial

Campbell also complains that his counsel should have objected to Deputy Foose's testimony as speculative or on the ground that the deputy was not qualified as an expert. *See* TEX. R. EVID. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."); *see also Fairow v. State*, 943 S.W.2d 895, 898-901 (Tex. Crim. App. 1997) (a trial court may admit lay opinion testimony if it is rationally based on personal knowledge of events and is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; the admission or exclusion of such evidence is subject to abuse of discretion review).

Deputy Foose's testimony as to the false nature of the card and what Campbell intended in possessing the card was based on his perceptions and his observations of the card

---

> interrogation unless they have been recorded, the defendant has been given statutory warnings, and the defendant knowingly, intelligently, and voluntarily waives the rights contained in those warnings, among other requirements. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)-(e). The record did not show whether appellant had received the statutory warnings, had waived his rights, or had been recorded. We thus cannot know whether an objection based on article 38.22 would necessarily have prevailed.
>
> Accordingly, determining counsel's reasons for not raising these objections, or for not seeking a hearing to develop facts under article 38.22, would require speculation done in hindsight, which we may not do. *See Gamble*, 916 S.W.2d at 93.

*Campbell v. State,* No. 01-01-01057-CR., 2002 WL 31941499 at *5 (Tex. App. -- Houston [1st Dist.] 2002, pet. ref'd) (not designated for publication).

and of Campbell's behavior. The testimony was helpful to a clearer understanding of the determination of the facts in issue, whether the card was false and whether Campbell intended to use the forged Social Security card. Any objection by counsel would have been futile.

Campbell further argues that the statement to Deputy Foose was inadmissible hearsay. The statement was an admission by Campbell and not hearsay under Rule 801(e)(2)(A) of the Texas Rules of Evidence. Any objection to Foose's testimony about Campbell's admission would have been futile.

Campbell also argues that defense counsel was ineffective for failing to ask for a hearing on the admissibility of Deputy Foose's testimony. Campbell has not demonstrated that the trial court would have granted such a request or that it would have affected the outcome. The grounds Campbell identifies for objecting to Deputy Foose's testimony would not have succeeded even if aired in the hearing. Defense counsel could reasonably have determined that asking for a hearing would have been futile.

Campbell is not entitled to relief on this claim.

### E. The Claim of Counsel's Failure to Question Effectively the Improper Admission of Damaging Testimony

Campbell complains that defense counsel did not pose the right questions to Deputy Foose and, as a result, was forced to admit into evidence an offense report that was detrimental to Campbell's defense. Campbell explains that Deputy Foose took two Social Security cards from him. Deputy Foose determined that the first Social Security card, 232-

54-2525, was a forgery. Deputy Foose checked the second Social Security card, 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, and noted in the offense report that "the number was coming back to [Campbell] not a child." (Reporter's Record, Vol. VII, Defendant's Ex. 1, p. 5). Campbell states that Deputy Foose incorrectly concluded that the card belonged to Campbell because it had his name. Deputy Foose did not know that Campbell's deceased son had the same name as Campbell.

Counsel tried unsuccessfully to ask if Deputy Foose had stated in the report that the number on the second card was assigned to Campbell. Counsel became frustrated by the prosecutor's repeated objections and offered the entire offense report into evidence. The offense report stated that Campbell was in police custody because he was charged with assault. The report also stated that Campbell had admitted purchasing the counterfeit card for $800. Campbell states that his counsel should have asked if Foose ran a check on the second card or to read the name of the person to whom the card was issued.

During his cross-examination of Deputy Foose, defense counsel tried to ask about information included in the offense report. Defense counsel repeatedly tried to ask if Deputy Foose had stated in the offense report that the second Social Security card belonged to Campbell. Each time, the trial court sustained the State's objection to question about a document not in evidence and to improper impeachment. After one such objection, the following discussion occurred:

> [Counsel]: I am just--I would like to admit the offense report for the limited purpose of.

[Court]: There is no limited purpose. It's admitted or not admitted.

[Counsel]: An offense report is not technically admissible.

[State]: If you wish to admit it, I will not object.

(Reporter's Record, Vol. IV, p. 27).

Counsel moved to admit the entire report. Counsel then had the deputy read from the report that the second card was confirmed as Campbell's, even though Campbell had claimed that it was not his. On cross-examination, the State had the deputy read from the report that "the defendant stated he had bought the [first] card . . . from a friend for $800 but could not produce his name." The report also stated that Campbell was at the police station on an outstanding assault warrant.

Campbell raised this issue on appeal. The state appellate court found as follows:

> We hold that appellant has not met his burden of showing harm under the second prong of *Strickland*. Appellant does not complain on appeal that trial counsel was ineffective for allowing the deputy to testify that "due to . . . something else the defendant had told me himself, it came to my conclusion that he was going to use it for possibly illegal purposes." We have also already held that appellant has not shown that counsel was ineffective for allowing the deputy to testify shortly afterwards that appellant "stated to me about [the first card's] being forged." (Emphasis added.) The offense report conveyed the same information, albeit in more detail. Additionally, nothing shows that the extraneous assault offense was published to the jury or that the jury requested the report during deliberations, and the State did not mention the extraneous assault offense during argument. *See* TEX. CODE CRIM. PROC. ANN. art. 36.25 (Vernon 1981) ("There shall be furnished to the jury upon its request any exhibits admitted as evidence in the case."); *Novak v. State,* 837 S.W.2d 681, 685 (Tex. App. - Houston [1st Dist.] 1992, pet.

> ref'd) (holding no harm shown under *Strickland* for counsel's admitting offense report that contained prior convictions because, among other reasons, nothing showed jury read report or that report was sent to jury, State did not mention prior convictions in argument and briefly asked only one witness about them, and defense counsel made only one, oblique reference to the convictions in closing argument).

*Campbell v. State,* No. 01-01-01057-CR., 2002 WL 31941499 at *6 (Tex. App. -- Houston [1st Dist.] 2002, pet. ref'd) (not designated for publication).

The record shows that defense counsel asked Deputy Foose questions designed to show that the statement he had written on the police report, that the card numbered 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 had "come back" (was assigned) to Campbell, was false. (Reporter's Record, Vol. IV, p. 30). Eventually, counsel had Deputy Foose read this paragraph from the report. Testimony and other evidence at trial showed that Campbell had told Deputy Foose that the card belonged to his deceased son, which was confirmed. Counsel tried to show on his cross-examination of Deputy Foose that Campbell had told the truth about the card and Deputy Foose had not. Campbell does not explain how his proposed questions would have succeeded in preventing the admission of the offense report. Campbell's pure speculation that other cross-examination might have avoided the need to admit the offense report is insufficient to show deficient performance. *Duffsmith v. Collins,* 973 F.2d 1175, 1183 (5th Cir. 1992).

Nor can Campbell satisfy the prejudice prong of *Strickland*. There is no basis to find that but for Fullerton's admission of the police report, the result of his trial would have been different. The evidence at trial showed that the forged Social Security card was found in

Campbell's wallet while he was being booked on an unrelated arrest warrant. (Reporter's Record, Vol. IV, pp. 16-18). The card contained Campbell's typed name, with a typographical error. (Reporter's Record, Vol. IV, p. 20). The number 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 was not issued to Campbell or in another name he had used, Dale Charles George. (*Id*. at 39). Deputy Foose testified that the card had last been issued in January 1955, two years before Campbell's birth on August 7, 1957. (*Id*. at 40). Deputy Foose testified that Campbell had easy access to the fake card in his wallet. (*Id*. at 22-23). Deputy Foose testified that Campbell had made a statement showing that he knew the card was a forgery. (*Id*. at 23-24). The offense report supplemented the information already made known to the jury through the State's case-in-chief about Campbell's statement, and that he was being booked on an arrest when the cards were discovered in his wallet. Campbell has not shown that the state court's rejection of this claim was unreasonable. He is not entitled to relief on this claim.

### F. The Claim that Counsel Failed to Request a Jury Instruction

Campbell claims that his trial counsel was ineffective in failing to ask for a jury instruction on the lesser-included offense of possession of a forged government instrument. (Docket Entry No. 1, Petitioner's Memorandum, pp. 16-17). Campbell argues that the evidence only supported a charge that he possessed a forged government instrument, not that he forged a writing with the intent to defraud another person.

The forgery statute provides:

> (a) For purposes of this section:
>
> (1) "Forge" means:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another who did not authorize that act;

(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii) to be a copy of an original when no such original existed;

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).

(2) "Writing" includes:

(A) printing or any other method of recording information;

(B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and

(C) symbols of value, right, privilege, or identification.

(b) A person commits an offense if he forges a writing with intent to defraud or harm another.

(c) Except as provided in Subsections (d) and (e) an offense under this section is a Class A misdemeanor.

(d) An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.

> (e) An offense under this section is a felony of the third degree if the writing is or purports to be:
>
> (1) part of an issue of money, securities, postage or revenue stamps;
>
> (2) a government record listed in Section 37.01(2)(C); or
>
> (3) other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person. . . .

TEX. PENAL CODE 32.21 (Vernon Supp. 2004-2005).

A two-step test applies to determining whether to instruct a jury on a lesser-included offense. *Threadgill v. State,* 146 S.W.3d 654, 665 (Tex. Crim. App. 2004); *Feldman v. State,* 71 S.W.3d 738, 750 (Tex. Crim. App. 2002). The first step is to determine whether the offense is included within the charged offense. *Threadgill,* 146 S.W.3d at 665. The second step is to determine whether the record contains some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *Id.*; *Feldman,* 71 S.W.3d at 750; *Threadgill*, 146 S.W.3d at 665. The evidence must establish guilt of the lesser-included offense and innocence as to the charged offense. *Id.*

The Texas Penal Code does not make possession of a forged government instrument an offense separate from forgery. Section 32.21(a)(1)(C) defines "forgery" as possessing "a writing that is forged with the intent to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged." Possession of a forged instrument is not a lesser-

included offense of forgery of a government instrument. Defense counsel's decision not to request a jury instruction on the lesser-included offense of possession was neither deficient nor prejudicial.

### G. The Claim that Defense Counsel Failed to Object to the Limine Motion on the Conspiracy Defense

Campbell complains that his defense counsel should have objected to the prosecutor's oral motion to prohibit reference to a conspiracy defense. (Docket Entry No. 1, Petitioner's Memorandum, p. 17). Campbell asserts that he should have been able to present his defense that his wife, Opal Ragston, and her boyfriend, Derek Watson, were lovers who conspired to put the fake Social Security card in Campbell's wallet to have him convicted and imprisoned.

The prosecutor made a motion in limine at the start of jury selection asking that Campbell "not submit any evidence not admissible, not limited to but including any theories that he has that his wife and her cousin being O[p]al [Ragston] and Derrick Watson had set him up on an assault charge or anything relating to any charge other than the one in the case in chief." (Reporter's Record, Vol. III, pp. 6-7). Defense counsel did not object. The court did not expressly rule on the motion. When defense counsel tried to introduce a police offense report during Campbell's direct examination, the prosecutor objected on the ground that the document was irrelevant and hearsay. (Reporter's Record, Vol. IV, p. 42). The court sustained the objection. (*Id.*). At the bench, defense counsel explained that he was offering the document to support the defense theory that people with access to Campbell's apartment

had conspired to have him illegally convicted. The court ruled that the document did not provide support for the defense theory and stated that the objection had been resolved, apparently referring to the limine motion. (Reporter's Record, Vol. IV, p. 43).

During closing argument, defense counsel stated, "I think that the deputy probably found that card, but Mr. Campbell tells you, that is on cross from the prosecutor, his wife and her boyfriend probably put it there." (Reporter's Record, Vol. IV, p. 63). The prosecutor objected on the ground that the statement was based on evidence outside the record. (*Id*.). The court overruled the prosecutor's objection and explained that lawyers' arguments are not evidence.

From the record, it does not appear that an objection to the motion in limine would have been sustained if made. The only evidence in support of the conspiracy theory that Campbell has identified is the police offense report. The trial court determined that the report offered no support for Campbell's conspiracy theory that his wife and her cousin were lovers who wanted to have Campbell imprisoned so they planted a false Social Security card in his apartment, using his name, so that it would be in his pocket when he was arrested on a charge of assaulting the wife. Defense counsel's failure to object to the limine motion was neither deficient nor prejudicial. Campbell does not identify or present evidence that shows that the state courts unreasonably applied federal law in denying relief on this claim.

### H. The Claim of Counsel's Failure to Object to Hearsay Testimony

Campbell asserts that defense counsel should have requested a running objection to Deputy Foose's testimony about statements made to him by another detective. (Docket Entry No. 1, Petitioner's Memorandum, p. 18). Deputy Foose testified that he saw a detective with the warrants division booking Campbell. (Reporter's Record, Vol. IV, p. 16). The prosecutor asked Deputy Foose if the detective had asked him something. (*Id*. at 17). Defense counsel objected to Foose's testimony "as to what the detective said to him," on the basis of hearsay. The court overruled the objection. (Reporter's Record, Vol. IV, p. 17). Deputy Foose testified that the detective had asked him to "look at a social security card." (*Id.*).

The record shows that defense counsel did object to Deputy Foose's testimony about what the detective had said, on the basis of hearsay. The trial court overruled the objection. Campbell has not shown any basis to conclude that the trial court would have granted a running objection on the same ground. Nor does Campbell show that the detective's statement to Deputy Foose was hearsay, because it was not offered for the truth of the matter asserted. Instead, Deputy Foose testified that the detective asked him to look at something.

That statement was relevant to show that it was said, not to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Campbell has not shown any basis to find deficiency or prejudice in defense counsel's failure to request a running objection to Deputy Foose's testimony about the detective's statement. Campbell is not entitled to relief on this issue.

## I. The Claim that Defense Counsel Failed to Obtain a Complete Copy of the Trial Transcript

Campbell asserts that defense counsel's failure to obtain a complete copy of the transcript of the first trial for use during second trial deprived the defense of opportunities to present favorable evidence to the jury, to challenge harmful evidence. and effectively to cross-examination of witnesses. (Docket Entry No. 1, Petitioner's Memorandum, p. 19). The record does not support the conclusion that defense counsel did not have the transcript of the first trial during the second trial. Defense counsel told the court before the second trial that he had paid the court reporter and was waiting for the transcript of the first trial. The trial court said that the transcript would be ready by noon; the record does not suggest that counsel did not receive it. Indeed, during his cross-examination of Deputy Foose, defense counsel said that he was going to question him from the "transcript which is prior testimony." (Reporter's Record, Vol. IV, p. 27). Campbell offers no evidence showing that his counsel did not have access to the transcript of the first trial during the second trial.

Nor has Campbell explained how the testimony from the first trial should have been put to different or better use in the second trial. Before the second trial began, the prosecutor made a motion in limine prohibiting references to the fact that there had been a prior trial. (Reporter's Record, Vol. III, p. 6). Defense counsel tried to impeach Deputy Foose with testimony from the first trial. (Reporter's Record, Vol. IV, p. 34). The prosecutor objected, and the trial court sustained the objection on the basis of the limine order. Campbell has not

shown how defense counsel's use of the transcript from the first trial was deficient or prejudicial.

Campbell maintains that the cumulative effect of the various errors in his trial merits federal habeas relief. (Docket Entry No. 1, Petitioner's Memorandum, p. 19). The cumulative error doctrine provides that "an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999). Campbell has failed to establish federal constitutional violations error in the conduct of his state trial, necessary to warrant relief under the cumulative error doctrine. *See United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (no cumulative error because defendant failed to identify single error in jury selection); *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

## VI. The Claim of Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985). This court reviews counsel's appellate performance under *Strickland v. Washington,* 466 U.S. 668 (1984). *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998). Campbell must allege and present facts that, if proven, would show that his attorney's representation was deficient and that the deficient performance caused prejudice. *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163

F.3d 285, 300 (5th Cir. 1998). The first element requires Campbell to show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999) (quoting *Strickland*, 466 U.S. at 688). This court's review is deferential, presuming that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Effective assistance of appellate counsel does not mean counsel will raise every available nonfrivolous ground for appeal. *See Evitts,* 469 U.S. at 394; *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *See Strickland*, 466 U.S. at 690-91. To show prejudice, Campbell must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones*, 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694). Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome. *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

The record shows that appellate counsel argued that trial counsel rendered ineffective assistance by failing to make a proper motion for continuance; misunderstanding Rule 902(1) of the Texas Rules of Evidence; failing to object to Deputy Foose's testimony; and introducing the police report into evidence. (*Id*. at 10-15). Campbell alleges that appellate

counsel was ineffective by failing to challenge the sufficiency of the evidence on appeal, with references to the record.

The indictment charged Campbell with forgery of a government instrument. Deputy Foose testified that he saw a detective retrieve a Social Security card from Campbell's wallet. The evidence showed that the card was forged. Deputy Foose testified that Campbell made statements showing his knowledge that the card was fake. Appellate counsel could reasonably have determined that challenging the sufficiency of the evidence on appeal would have been futile.

Campbell argues that appellate counsel also should have challenged the trial court's instruction to the jury on circumstantial evidence and on the lesser-included offense of possession of a forged government document. At Campbell's trial, Deputy Foose was asked about what he observed – the detective retrieve a forged Social Security card from Campbell's wallet – and what Campbell had said. This evidence was not circumstantial. There is no basis for finding that appellate counsel was deficient in failing to challenge the trial court's jury instructions. There was direct evidence to support the conviction and, as discussed above, no basis for habeas relief in the failure to give a lesser-included offense instruction.

Campbell claims that appellate counsel was ineffective in failing to secure a copy of the transcript of the first trial. The first trial resulted in a hung jury and could not be appealed. Appellate counsel clearly had a transcript of the second trial. Campbell does not

explain how the outcome of the appeal would have been different if counsel had reviewed the transcript of the first trial.

A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Federal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable. *Id*. "An unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 410. The Fifth Circuit has also held that it is the state court's "ultimate decision" that is to be tested for reasonableness, "not every jot of its reasoning." *Morrow v. Dretke,* 367 F.3d 309 (5th Cir. 2004) (citing *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001), *cert. denied*, 535 U.S. 982 (2002)). Under the deferential standard of AEDPA, the federal habeas court reviews only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to, or a misapplication of, clearly established federal law. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). "We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Id*. at 236. If the Texas court identified *Strickland* as the applicable federal law in this case, this court must determine whether the decision resulting from the state court's application of federal law was an unreasonable misapplication of the law. *Id*. The Texas court applied *Strickland* in denying relief in this case, and this court finds that its application of *Strickland* was objectively reasonable. The state habeas court found that Campbell failed

to show that his appellate counsel's conduct fell below an objective standard of reasonableness and that but for counsel's alleged deficient conduct, there was a reasonable probability that the result of the proceeding would have been different. *Ex parte Campbell*, Application No. 58,279-01 at 69, Finding #2. The Court of Criminal Appeals explicitly based its denial of habeas relief on this finding. These determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Campbell has not produced clear and convincing evidence to rebut these findings. The state court's decision as to the effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly-established federal law. Campbell has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## VII. The Claims Based on Trial Court Error

Campbell claims that the trial court prevented defense counsel from acting as Campbell's advocate. The claims of trial court error appear to be claims of bias. Campbell first complains that the trial court limited counsel's effectiveness by denying the continuance request at the beginning of the second trial. Counsel explained that a continuance was necessary to locate witnesses and to obtain a copy of the transcript of the trial that ended in a hung jury the day before. (Docket Entry No. 1, Petitioner's Memorandum, p. 26). The decision to grant or deny a continuance is within the discretion of the trial judge. *See Thompson v. Mississippi*, 914 F.2d 736, 739 (5th Cir. 1990). Habeas relief cannot issue unless the decision was so arbitrary and fundamentally unfair that it violates constitutional principles of due process and caused prejudice. *Hicks v. Wainwright*, 633 F.2d 1146, 1148

(5th Cir. 1981). A petitioner must show there was an abuse of discretion and "a reasonable probability that the granting of the continuance would have permitted him to adduce evidence that would have altered the verdict." *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) (citations omitted).

The trial judge pointed out that the first trial had lasted 45 minutes, both Campbell and his defense counsel had heard the evidence, the transcript would be available, the case was 307 days old, Campbell was in jail, he was subject to a detainer because of his immigration status, and the case needed to be heard. (Reporter's Record, Vol. III, pp. 4-5).

The record reveals no abuse of discretion in denying the motion for continuance that could justify habeas relief. Nor is there a basis to find a reasonable probability that granting the continuance would have permitted Campbell to present evidence that would have altered the verdict. Campbell argues that a continuance would have allowed him to present a witness to testify that Opal Ragston and Derek Watson were lovers who engaged in an elaborate conspiracy to convict Campbell for having the false Social Security card. The trial court granted the prosecutor's motion in limine prohibiting testimony on this defense theory. Granting a continuance to locate these witnesses would have been futile. Campbell also argues that the continuance was necessary to obtain the transcript of the first trial. As discussed above, the record shows that defense counsel did have access to the transcript of the first trial.

Campbell complains that the trial court did not allow him to present the defense of conspiracy. The prosecutor asked the court to require the defense not to submit any

"evidence not admissible" concerning the conspiracy theory. The court upheld the request. (Reporter's Record, Vol. III, pp. 6-7; Vol. IV, p. 43). No admissible evidence was offered that supported the defense or the claim of trial court error. (Reporter's Record, Vol. IV, p. 43).

Campbell also complains that the trial court repeatedly sustained the prosecutor's objections. The court has reviewed the record and finds no basis for a finding of bias in the trial court rulings that could justify habeas relief. Campbell is not entitled to habeas corpus relief on this claim.

**VIII. Conclusion**

Respondent's Motion for Summary Judgment, (Docket Entry No. 8), is GRANTED. Campbell's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

As the Supreme Court made clear in its recent decision in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id*. at 1042.

Because Campbell has not made the necessary showing, this court will not issue a COA.

SIGNED on September 27, 2005, at Houston, Texas.

Lee H. Rosenthal
United States District Judge